## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| DR. LUCIO BARBAROTTA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05 C 3241 |
| | ) | |
| CHICAGO BOARD OF EDUCATION and | ) | Judge Rebecca R. Pallmeyer |
| FRANCHION BLUMENBERG, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Dr. Lucio Barbarotta, an Italian-born American, was employed as a school language teacher by Defendant Chicago Board of Education ("the Board") at John F. Kennedy High School ("Kennedy"). Defendant Dr. Franchion Blumenberg was the principal at Kennedy for three years while Plaintiff taught there, until Plaintiff's positions as a Spanish and Italian language teacher were eliminated and then reinstated with additional requirements that Plaintiff did not meet. Plaintiff alleges that he was discriminated against on the basis of his national origin and retaliated against for his complaints about the discrimination. Defendants moved for summary judgment, arguing that Plaintiff has failed to establish that his positions were eliminated for any unlawful reasons. For the reasons set forth below, Defendants' motion is granted.

## FACTS

The facts are drawn principally from the Defendants' Local Rule 56.1 Statement of Uncontested Facts (hereinafter "Defs.' 56.1"). Plaintiff has not filed a response to the Defendants' statement pursuant to Local Rule 56.1(b)(3)(B), but has instead filed only a statement of additional facts pursuant to Local Rule 56.1(b)(3)(C) (hereinafter "Pl.'s 56.1"). Accordingly, the facts set forth in Defendants' statement are deemed admitted, except where material in Plaintiff's statement of additional facts contradicts Defendants' statement. *See* Local Rule 56.1(b)(3)(C); *see also Bordelon v. Chi. Sch. Reform Bd. of Trustees*, 233 F.3d 524, 527 (7th Cir. 2000) ("[W]e have

consistently and repeatedly upheld a district court's discretion to require strict compliance with its local rules governing summary judgment.").

Plaintiff was born in Italy and is now a United States citizen. (Pl.'s 56.1 ¶ 1.) He received a Bachelor of Arts degree in the Secondary Education of Spanish and Italian as well as a Master of Arts in Applied Linguistics and Spanish Literature from the University of Illinois, and a Doctorate in Foreign Languages and Literature from the University of Pisa. (*Id.* ¶¶ 1, 2.) In 1994 or 1995, Plaintiff was hired at Kennedy as a Spanish and Italian language teacher. (*Id.* ¶ 3; Defs.' 56.1 ¶ 3.) At the time he was hired, Plaintiff held Illinois certificates to teach both Spanish and Italian. (Defs.' 56.1 ¶ 2.)

In 1999, Plaintiff was teaching Spanish and Italian classes at Kennedy, and receiving positive performance evaluations. (*Id.* ¶¶ 4, 9.) In 1998 and 1999, Principal Arthur Mrumlinski evaluated Barbarotta as "excellent," the second highest out of four categories.[1] (*Id.* ¶ 9.) Blumenberg, who succeeded Mrumlinski as principal in November 1999, evaluated Plaintiff for the first time in 2000 and rated his teaching even higher, as "superior." (*Id.* ¶¶ 7, 10.) The evaluations by both principals nevertheless noted some concerns about record-keeping, tardiness, and parent contact. (Exs. E, F, & G to Defs.' 56.1.)

At the beginning of the 1999-2000 school year, Mrumlinski closed the first-year Italian classes due to low enrollment. (Defs.' 56.1 ¶ 5; Ex. D to Defs.' 56.1.) According to Barbarotta, the Italian classes were ultimately reinstated because he–along with parents, students, and members of the Italian-American community–protested their cancellation.[2] (Charge of Discrimination, Ex. Y to Defs.' 56.1.) In November of that year, Defendant Blumenberg took over as principal at Kennedy

---

[1] The four categories were "superior," "excellent," "satisfactory," and "unsatisfactory." (Defs.' 56.1 ¶ 9.)

[2] The record does not reflect whether the classes were reopened prior to the start of the school year.

2

and appointed Barbarotta chairperson of the language department in order to "use his intellect in a positive way." (Defs.' 56.1 ¶ 7; Blumenberg Dep. 28:18, Ex. A to Defs.' 56.1.) Soon after naming him to the position, however, Blumenberg began to have concerns about Plaintiff's conversations and relationships with parents and other teachers. (Defs.' 56.1 ¶ 11.) Specifically, some teachers complained that he belittled them, was crude and curt in his dealings with them, and refused to share educational resources with them. (Blumenberg Dep. 29:9-16, Ex. A to Defs.' 56.1.) Ultimately, these concerns led Blumenberg to replace Plaintiff as Language Department Chair after about one year. (Defs.' 56.1 ¶ 12.) It is undisputed that the department chair did not enjoy any tangible benefits—such as an increase in salary or tenure rights–by virtue of the position. (*Id.* ¶ 13.)

Plaintiff alleges that at a Local School Council Meeting attended by students and parents in February 2001, Blumenberg disclosed that Plaintiff was the subject of a Department of Child and Family Services ("DCFS") investigation; Blumenberg denies having made such a statement, and the record contains no further reference to either her statement or the existence of an investigation against Barbarotta.[3] (Defs.' Resp. to Pl.'s 56.1 (hereinafter "Defs.' Resp.") ¶ 12.) Nor has Plaintiff identified a nexus between the alleged statement concerning a DCFS investigation and his national origin. Plaintiff also claims that the following month, in March 2001, Blumenberg closed the Italian I class at Kennedy to replace it with a Mandarin Chinese class, but ultimately reinstated the class after members of the community opposed the change.[4] (Pl.'s 56.1 ¶¶ 8, 9.) Blumenberg maintains

---

[3] The court notes that Plaintiff has not provided a non-hearsay basis for this claim. He does not claim to have been present at the meeting himself. Plaintiff did attach a letter–purportedly from a parent who was present at the meeting–to his 56.1 statement, claiming that Blumenberg mentioned a DCFS investigation. (Attach. to Pl.'s 56.1.) This, too, is hearsay, and Plaintiff has not explained his failure to provide an affidavit from the parent or anyone else who claimed to have heard the statement. *See* FED. R. CIV. P. 56(c), (e); *Haywood v. Lucent Techs., Inc.*, 323 F.3d 524, 533 (7th Cir. 2003) (evidence relied upon to defeat summary judgment motion must be evidence that would be admissible at trial).

[4] Plaintiff does not explain how the alleged closing of the Italian I class could have occurred in the middle of the semester, as its March date would imply.

that the class was never closed; she admits that she "brought up the possibility" of replacing Italian with Chinese, but dropped the idea after parents and staff opposed it. (Defs.' Resp. ¶¶ 8, 9.)

The following year, on March 26, 2002, Blumenberg issued an E-1 notice—a form that remains in a teacher's file and reports the potential lowering of the teacher's evaluation—to Plaintiff, warning him that his evaluation would be lowered if he did not incorporate Blumenberg's suggestions about improving his demeanor and interpersonal relationships. (Defs.' 56.1 ¶ 14.) By June 14, 2002, Blumenberg concluded that Plaintiff had not improved, noting that he "creates hostility in the work environment" and "refuses to abide by [the] Discipline Code for [Chicago Public School] employees." (Teacher Evaluation Review, Ex. J to Defs.' 56.1.) Blumenberg downgraded his evaluation from "superior" to "excellent." (Defs.' 56.1 ¶ 15.) Plaintiff filed a contract grievance alleging that the procedure followed by Blumenberg in downgrading him was insufficient, but the Office of the Chief Executive Officer of the Chicago Public Schools denied the grievance because Blumenberg informed Barbarotta of steps he could take to avoid the downgrade when she provided him with the E-1 notice. (*Id.* ¶ 16; Mar. 4, 2003 Grievance, Ex. K to Defs.' 56.1.)

Despite the downgrade, Blumenberg planned for Barbarotta to teach four Italian classes and two Spanish classes during the 2002-2003 school year. (Defs.' 56.1 ¶ 17.) That summer, however, an administrator at the Board's Department of Human Resources informed Blumenberg that Plaintiff's teaching certificates in both Spanish and Italian had expired on June 30, 2002, and that he could not be recertified in time to teach in September 2002. (*Id.* ¶ 18.) Plaintiff asserts that he in fact paid the necessary fees to the Illinois State Board of Education ("ISBE") on June 26, 2002 to renew his Italian and Spanish teaching certificates that were set to expire on June 30. (Pl.'s 56.1 ¶ 14.) Plaintiff also maintains that it is the "policy and practice" of the ISBE to renew the certificates automatically upon payment of the fee, although he cites no authority that supports this claim. (*Id.*) Defendants dispute that renewal is automatic and point out that the state statute that authorizes certificate renewals requires some review of continuing professional development activities. (Defs.'

4

56.1 ¶ 22; 105 ILCS 5/21-14 (c)-(e).) In any event, it is undisputed that Blumenberg learned in July 2002 that Barbarotta's certifications had expired and that he would not be recertified in time for classes to start; Blumenberg attempted to contact Barbarotta during the summer, but Barbarotta spent the summer in Europe and was unreachable by phone. (Defs.' 56.1 ¶¶ 20, 30.)

Based on Barbarotta's certificates having expired, Blumenberg directed her assistant principal to advertise an opening for an Italian teacher; when it appeared that no qualified replacement could be found, Blumenberg decided not to offer the planned Italian classes. (*Id.* ¶¶ 23-24.) Around this time, Blumenberg[5] also eliminated three Spanish teaching positions and reopened them with the requirement that the teachers must have an additional endorsement in another "core" subject.[6] (*Id.* ¶ 25.) Plaintiff did receive a temporary certificate on August 30, 2002, which enabled him to teach Spanish for six weeks,[7] but his Italian certificate was not renewed until December 5, 2002.[8] (*Id.* ¶ 28.) The Board's Department of Human Resources determined that Plaintiff had the least seniority among Spanish teachers who did not possess any additional endorsements, and so placed him into the pool of teachers to be reassigned. (*Id.* ¶ 26.) Plaintiff

---

[5] Defendants' statements concerning whose choice this ultimately was are not entirely consistent. (*Compare* Defs.' 56.1 ¶ 25 ("Blumenberg took this action") *with* Defs.' 56.1 ¶ 36 ("The ultimate decision as to which teachers are qualified to fill any certain position rests with the Board, not the principal.").) For purposes of this motion, the court assumes that both Defendants had some responsibility for the closing and reopening of the Spanish teaching positions.

[6] Defendants do not explain what precisely is meant by "core" subject and whether a qualification to teach an additional language would qualify.

[7] The record is not clear as to whether the temporary certificate became a permanent one. (*Compare* Ex. B to Defs.' 56.1, at 1 (showing Barbarotta possessing only a valid Type 9 certificate in Italian) *with* Ex. S to Defs.' 56.1 (showing both Italian and Spanish Type 9 certificates).)

[8] Plaintiff claims that he also received the certificate for Italian on August 30, 2002. (Pl.'s 56.1 ¶ 14.) In fact, although one of the documents confusingly lists both August 30 and December 5 as the issue dates (Ex. B to Defs.' 56.1, at 6), the records kept by the Illinois State Board of Education show that the actual issue date of his Italian certification was December 5, 2002. (Ex. B to Defs.' 56.1, at 1; Ex. S to Defs.' 56.1.)

5

contends that one of the Spanish teachers who remained at Kennedy, Jose Lopez, did not possess a second teaching certificate, but Defendants point out that Lopez's certificate was a Type 29 Transitional Bilingual Teaching certificate, which qualified him to teach subjects in Spanish. (*Id.* ¶ 27.) By contrast, Plaintiff's August 30 certificate was a Type 9 Standard Secondary Teaching certificate, which only qualified him to teach Spanish itself.[9] (Defs.' Resp. ¶¶ 14, 16.)

Barbarotta made a number of formal and informal complaints regarding the termination of his teaching position at Kennedy. First, he filed a grievance over the elimination of his position on September 13, 2002, but the Office of the Chief Executive Officer of the Chicago Public Schools denied that grievance on the ground that it was not a permitted subject of bargaining under Illinois law. (Defs.' 56.1 ¶ 30; Mar. 13, 2003 Grievance, Ex. Q to Defs.' 56.1.) Barbarotta also went to see Sylvia Acierto, the Board's World Language Program Director. (Defs.' 56.1 ¶ 31.) Barbarotta claims that Acierto told him the closing of his position was improper (Pl.'s Aff. ¶ 16, Attach. to Pl.'s 56.1), but Acierto denies saying that. (Acierto Decl. ¶ 3, Ex. W to Defs.' 56.1.) Finally, at some undisclosed point after his positions were terminated, Barbarotta filed a claim of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (EEOC Determination, Attach. to Pl.'s 56.1.)

Pursuant to the Board's policy for reassigned teachers, Barbarotta was provided with resume and interview training and assistance in finding another job. (Defs.' 56.1 ¶ 28.) The Board set up fifteen interviews for Barbarotta during the time he was in the reassigned teacher pool, and he ultimately was hired at Fenger High School in August 2003.[10] (*Id.* ¶ 35.)

---

[9] Barbarotta's previous certifications had been Type 29 certifications. (Ex. B. to Defs.' 56.1, at 2.) For undisclosed reasons, his renewal certificates were Type 9 certifications. (*Id.*)

[10] Plaintiff alleges that during the year between his displacement from Kennedy and his hiring at Fenger, he was twice offered positions–apparently orally–at different high schools, but the offers were subsequently withdrawn, reportedly after conversations with Blumenberg dissuaded officials at those schools from hiring him. (Pl.'s 56.1 ¶¶ 18, 19.) As Plaintiff has introduced no non-
(continued...)

The court notes that Plaintiff alleges in an affidavit that Blumenberg "made many derogatory remarks about my Italian heritage, my Italian education, and the Italian Program at Kennedy High School. . . . in the presence of faculty, students, and parents." (Barbarotta Aff. ¶ 19, Attach. to Pl.'s 56.1.) Plaintiff did not make these allegations in his 56.1 filing and thus did not afford Defendants an opportunity to respond to them.

## **DISCUSSION**

Plaintiff alleges that both Defendants took adverse employment actions against him because of his national origin and retaliated against him for complaining about those actions, in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964.[11] For the purposes of determining liability, the same standards apply to both § 1981 and Title VII claims. *Bennett v. Roberts*, 295 F.3d 687, 697-98 (7th Cir. 2002). Defendants seek summary judgment on both the discrimination and retaliation claims.

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In determining whether there is a genuine issue of fact, the court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Bennington v. Caterpillar Inc.,* 275 F.3d 654, 658 (7th Cir. 2001). The party who bears the burden of proof on an issue may not rest solely on

---

[10](...continued)
hearsay evidence to support these accusations, the court does not consider them on summary judgment. Blumenberg denies having any conversations with officials at other schools about Barbarotta. (Defs.' Resp. ¶¶ 18, 19.)

[11] Specifically, the Amended Complaint charges Blumenberg with national origin discrimination in violation of § 1981 and the Board with national origin discrimination in violation of "Title VII/Section 1981." (Am. Compl. ¶ 22.) The Amended Complaint does not specify the basis of the retaliation claim, but asserts it against both Defendants. As there is no basis for a claim of individual supervisory liability under Title VII, *see Williams v. Banning*, 72 F.3d 552, 554 (7th Cir. 1995), any Title VII claims against Defendant Blumenberg are dismissed.

7

the allegations made in the pleadings or on speculation, but must affirmatively demonstrate the existence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Springer v. Durflinger*, 518 F.3d 479, 483-84 (7th Cir. 2008).

The burden of proof is the same for both discrimination and retaliation cases. In either instance, the plaintiff may satisfy his burden under either the direct method—which uses direct or circumstantial evidence to show that the plaintiff suffered adverse employment action as a result of his membership in a protected class or participation in a protected activity—or the indirect method—which requires that the plaintiff establish a prima facie case of discrimination that is not rebutted by a valid, non-pretextual reason for the employer's action. *See Rozskowiak v. Vill. of Arlington Heights*, 415 F.3d 608, 612 (7th Cir. 2005) (national origin discrimination claim); *Sylvester v. SOS Children's Vills. Ill., Inc.*, 453 F.3d 900, 902 (7th Cir. 2006) (retaliation claim). Although Plaintiff has not specified whether he is proceeding under the direct or the indirect method, on the record submitted to the court, neither of his claims survives summary judgment under either method.

**I.    Discrimination**

At the outset, the court notes that Plaintiff has not presented any direct evidence of national origin discrimination that would clearly be admissible at trial. Plaintiff's affidavit claims that "faculty, students, and parents" heard Blumenberg use slurs directed at Plaintiff's heritage, but never asserts that Plaintiff himself heard Blumenberg use such slurs. (Barbarotta Aff. ¶ 19, Attach. to Pl.'s 56.1.) Nor has Plaintiff submitted affidavits from any of these parties who allegedly heard Blumenberg make the derogatory remarks, or offered any other non-hearsay evidence that Blumenberg or the Board used such language. Even assuming that such derogatory statements were made, Plaintiff cannot establish the existence of a genuine dispute of fact concerning the claim that his termination was caused by discrimination.

Plaintiff does not suggest that there is direct evidence—such as an admission by

8

Defendants—to meet this burden. Instead, he relies on the following circumstantial evidence to support his claim of national origin discrimination: Defendants eliminated Plaintiff's teaching positions; Plaintiff had a teaching certificate at the start of the 2002 school year; Defendants reinstated the Spanish teaching position Plaintiff had held and filled that position with someone who was no more qualified than Plaintiff; Plaintiff's performance rating declined; and Blumenberg used hostile and abusive language concerning Plaintiff's national origin in her comments to others. (Pl.'s Mem. at 2-4.)

Even assuming that genuine issues exist as to all these allegations, they do not amount to a showing of a causal link between Plaintiff's firing and a discriminatory motive. *See Gorence v. Eagle Food Ctrs., Inc.*, 242 F.3d 759, 762 (7th Cir. 2001) ("there must be a real link between the bigotry and an adverse employment action" under the direct method). Plaintiff has not challenged Defendants' evidence that his evaluation was lowered and that he was removed from the department chair position because of his strained interactions with colleagues and parents. Furthermore, Plaintiff's educational certifications expired in June 2002, and he can present no evidence—other than an unsupported assertion that renewal is automatic upon payment of a renewal fee—that Defendants had any way of knowing that his certificates could be renewed in time for the new school year. Plaintiff also does not dispute that, prior to learning that his certificates had expired, Blumenberg had scheduled Plaintiff to teach six classes. That the Board provided him with training and set up numerous interviews for him is an indication that it had no motivation to remove him from teaching in the Chicago Public Schools.

Nor can Plaintiff prevail under the indirect method of proof. To make a prima facie case under the indirect method, a plaintiff must show that (1) he is a member of a protected class; (2) he was meeting his employer's legitimate expectations; (3) he nevertheless suffered an adverse employment action; and (4) another employee who was similarly situated to the plaintiff but not a member of the protected class was treated more favorably. *Rozskowiak*, 415 F.3d at 614 (citing

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). Plaintiff has established membership in a protected class and that the loss of his teaching slots was an adverse employment action. There is no basis for a finding in his favor on the other prima facie elements, however.

First, Plaintiff cannot establish that he was meeting his employer's legitimate expectations when his teaching positions were eliminated. Defendants do not dispute that Barbarotta was a skilled teacher, possessing "knowledge of his subjects and . . . passion for Italian." (Defs.' 56.1 ¶ 11.) Nor was Blumenberg's stated reason for terminating Plaintiffs' position performance-related. He nevertheless was not meeting expectations because he was not certified to teach his classes as required by state law. Despite his repeated assertions that "payment of the fee was the only requirement required to renew Plaintiff's certificates" (Pl.'s 56.1 ¶ 14), the Illinois statute Plaintiff cites for this proposition in fact states that renewal requires "proof of continuing professional development." 105 ILCS 5/21-14(c). Plaintiff has therefore failed to state a genuine issue of material fact concerning his assertion that renewal was automatic upon his payment of the renewal fees in June 2002, and no basis at all for the suggestion that Defendants knew this. *See Powers v. Dole*, 782 F.2d 689, 695 (7th Cir. 1986) ("Conclusory allegations that have no factual support are insufficient to create a genuine issue of material fact."). Plaintiff's unsupported assertion that it is the "practice" of the ISBE to only require payment of the renewal fee fares no better. (Pl.'s 56.1 ¶ 14.) Plaintiff makes no claim that Defendants were aware that he would have a temporary Spanish teaching certification in time for the new school year. Indeed, when Blumenberg attempted to reach Barbarotta to inform him of the problem with his certification—at which time Barbarotta could presumably have told her that he would be certified by the start of the school year—Barbarotta was out of the country and unreachable. As Blumenberg was not aware that Barbarotta would be able to teach in the fall of 2002, Barbarotta cannot claim that he was meeting her legitimate expectations.

Additionally, Plaintiff has not provided any evidence of a similarly-situated employee. To

determine whether a similarly-situated employee who was not a member of the protected class was treated more favorably than the plaintiff, courts engage in a "flexible, common-sense inquiry." *Barricks v. Eli Lilly & Co.*, 481 F.3d 556, 560 (7th Cir. 2007). Barbarotta argues that Jose Lopez, one of the teachers retained by Kennedy to teach Spanish, was similarly situated to himself because both had only one certification,[12] but that Lopez was treated more favorably because he was not of Italian heritage. Specifically, Barbarotta alleges that Blumenberg hired Lopez to fill the Spanish position despite her requirement that language teachers be certified to teach core subjects in addition to languages. A careful review of the facts shows this argument to be meritless. Although Lopez and Barbarotta possessed the same total number of certificates, the certificates were of different kinds. Lopez possessed a Type 29 Transitional Bilingual Teaching certificate, which allowed him both to teach the Spanish language and to teach subjects in Spanish. Barbarotta, by contrast, possessed a temporary Type 9 Standard Secondary Teaching certificate in Spanish, which certified him to teach only the Spanish language itself. As review of Barbarotta's ISBE file shows, his previous certifications, prior to their expiration on June 30, 2002, were Type 29 certifications in both Italian and Spanish. (Ex. B to Defs.' 56.1, at 2.) For reasons not explained by either party, Barbarotta's attempts to renew those Type 29 certifications in 2002 were denied, and the only permanent certificate he possessed following the expiration of his old certifications was a Type 9 certificate in Italian. Accordingly, Lopez did in fact meet the qualifications established by Blumenberg that "the Spanish language teachers should have an additional endorsement in another core subject." (Defs.' 56.1 ¶ 25.) Lopez was thus qualified for the position based on his Type 29 certification and Plaintiff was not, so the two were not similarly situated.

In short, Plaintiff has failed to establish that he was qualified for the teaching position he

---

[12] Barbarotta actually claims that he had both his Italian and Spanish certifications by the time the school year began, and was thus more qualified than Lopez. As noted above, however, he possessed only a temporary Spanish certification at the time.

sought in 2002, or that Defendants treated any similarly-situated employee more favorably. Nor has Plaintiff offered any admissible circumstantial evidence of discrimination, given the hearsay nature of his conclusory evidence that derogatory remarks were made about his heritage. Summary judgment is granted in favor of Defendants.

## II. Retaliation

Plaintiff's Amended Complaint does not state the basis, statutory or otherwise, on which his claim of retaliation rests. Plaintiff claims that the retaliation was "for his written and verbal complaints regarding the discriminatory actions taken against him." (Am. Compl. ¶ 30.) The parties' arguments analyze the question under the presumption that the retaliation claim is a Title VII claim, and the court will analyze it as such. At the outset, it does not appear that he has even shown that he engaged in a protected activity. Title VII protects employees who oppose unlawful employment practices and those who filed a complaint pursuant to Title VII. *See* 42 U.S.C. § 2000e-3(a). Barbarotta has done neither. As discussed above, he has not established that the Board engaged in an unlawful employment practice (such as discrimination), nor that he ever complained to anyone about national origin discrimination prior to the termination of his teaching position.

Even assuming, as both parties do, that Barbarotta's "written and verbal complaints" constituted activity protected by Title VII, his retaliation claim still fails under both the direct and indirect methods of proof. Under the direct method, Plaintiff's claim of retaliation fails for the same reason his discrimination claim failed: the lack of a causal link between the protected activity and the adverse employment action. *See Argyropoulos v. City of Alton*, 539 F.3d 724, 734 (7th Cir. 2008). Plaintiff has variously proposed both that his written grievances (Am. Compl. ¶ 30) and his encouragement to students and parents to speak out against cancelling the Italian classes (Pl.'s Mem. at 4) constitute the protected activity. Plaintiff fails, however, to show any causal link between the termination of his teaching positions and either of these activities. A "causal link

12

between the protected expression and an adverse employment action may be established by showing that the protected conduct was a substantial or motivating factor in the employer's decision." *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 686 (7th Cir. 2008) (quoting *Culver v. Gorman & Co.*, 416 F.3d 540, 545 (7th Cir. 2005)). As evidence that the protected conduct was a motivating factor in Blumenberg's decision to close the positions, Barbarotta points to his lowered performance evaluation and an alleged increase in the frequency and intensity of the derogatory language directed at him by others. (Pl.'s Mem. at 4.) Neither allegation is supported in the record: Blumenberg lowered his evaluation for genuine reasons (his failure to establish positive relationships with coworkers and parents) that Barbarotta does not dispute; and, as mentioned above, Plaintiff has offered no admissible evidence of verbal abuse. Taking Plaintiff's claims for all they are worth, they fall well short of establishing that his complaints were a "substantial or motivating factor" in Blumenberg's decision to eliminate his teaching position, especially where Blumenberg has presented substantial, unrebutted evidence that the real motivating cause was Plaintiff's expired teaching certifications.

His claim of retaliation fares no better under the indirect method of proof, for the reasons described earlier. Plaintiff cannot create a genuine issue of material fact as to whether he was meeting Blumenberg's legitimate expectations, and he cannot point to any similarly-situated employee. Plaintiff's claim of retaliation fails under both methods of proof.

## CONCLUSION

Defendants' motion for summary judgment [24] is granted.

ENTER:

Dated: October 21, 2008

_____
REBECCA R. PALLMEYER
United States District Judge